UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREENFIELD SPV I, S.A.P.I. DE C.V.,
TERMINALES PORTUARIAS DEL PACÍFICO,
S.A.P.I. DE C.V. and TERMINAL MARÍTIMA
DE CARBÓN, S.A. DE C.V.,

                    Petitioners,

       v.

COMISIÓN FEDERAL DE ELECTRICIDAD and
CFE GENERACIÓN II EPS,

                    Respondents.

Case No. 24-cv-6400

---

## PETITION TO CONFIRM AND ENFORCE FOREIGN ARBITRAL AWARD

Andreas A. Frischknecht
Gretta Walters
Marcel Engholm

CHAFFETZ LINDSEY LLP

1700 Broadway, 33rd Floor
New York, NY 10019
Tel. +1 212 257 6960
Fax +1 212 257 6950
www.chaffetzlindsey.com

*Attorneys for Petitioners Greenfield SPV I,
S.A.P.I. de C.V., Terminales Portuarias del
Pacífico, S.A.P.I. de C.V. and Terminal
Marítima de Carbón, S.A. de C.V.*

## TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................. 1

Parties ......................................................................................................................... 3

Jurisdiction and Venue .............................................................................................. 4

Factual Background .................................................................................................... 7

    *A.*   *Background to the Dispute* ............................................................................. 7

    *B.*   *The Arbitration.* ............................................................................................. 10

ARGUMENT ............................................................................................................. 14

    *A.*   *Petitioners Have Satisfied All of the Statutory Conditions for Confirmation and Enforcement* ................................................................................................. 15

    *B.*   *None of the Limited Grounds to Refuse Confirmation and Enforcement Exist* ............... 16

    CONCLUSION ...................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH*,
    840 F. Supp. 2d 703 (S.D.N.Y. 2011) ................................................................. 15, 17

*American Constr. Mach. & Equip. Corp. v. Mechanised Constr. Of Pakistan, Ltd.*,
    659 F. Supp. 426 (S.D.N.Y. 1987) ........................................................................ 15

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) ....................................................................................... 7

*Energy Transp., Ltd. v. M.V. San Sebastian*,
    348 F. Supp. 2d 186 (S.D.N.Y. 2004) ................................................................. 15

*Gater Assets Ltd. v. AO Moldovagaz*,
    2 F.4th 42 (2d Cir. 2021) ........................................................................................ 6

*MGM Prods. Group, Inc. v. Aeroflot Russian Airlines*,
    573 F. Supp. 2d 772 (S.D.N.Y. 2003) ................................................................. 16

*Oltchim v. Velco Chems., Inc.*,
    348 F. Supp. 2d 97 (S.D.N.Y. 2004) ................................................................... 16

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006) ................................................................................... 7

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    584 F.3d 396 (2d Cir. 2009) ........................................................................... 15, 16

*Vorcom Internet Servs., Inc. v. L & H Eng'g & Design LLC*,
    No. 12 CV 2049(VB), 2013 WL 335717 (S.D.N.Y. Jan. 9, 2013)........................... 7

*Waterside Ocean Nav. Co., Inc. v. Int'l Nav. Ltd.*,
    737 F.2d 150 (2d Cir. 1984) ................................................................................. 15

*Zeiler v. Deitsch*,
    500 F.3d 157 (2d Cir. 2007) ................................................................................. 14

**Statutes**

9 U.S.C. § 201 ............................................................................................................ 15

9 U.S.C. § 202 ............................................................................................................ 17

9 U.S.C. § 203 .............................................................................................................. 4

9 U.S.C. § 204 ................................................................................................................ 7

9 U.S.C. § 207 ........................................................................................................ 16, 17

9 U.S.C. § 301 .......................................................................................................... 1, 17

9 U.S.C. § 302 .......................................................................................................... 4, 17

9 U.S.C. § 305 ................................................................................................................ 16

28 U.S.C. § 1330 ......................................................................................................... 4, 6

28 U.S.C. § 1391 ............................................................................................................. 7

28 U.S.C. § 1603 ......................................................................................................... 4, 5

28 U.S.C. § 1605 ......................................................................................................... 4, 5

28 U.S.C. § 1606 ............................................................................................................. 4

28 U.S.C. § 1607 ............................................................................................................. 4

28 U.S.C. § 1608 ............................................................................................................. 6

N.Y. C.P.L.R. § 302 ....................................................................................................... 7

**Treatises**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 6, 1958,
    21 U.S.T. 2517, 330 U.N.T.S. 38 ................................................................ 14, 15, 16, 17

Inter-American Convention on International Commercial Arbitration, January 30, 1975,
    TIAS 90-1027 ................................................................................ 1, 5, 14, 15, 16, 17

Petitioners Greenfield SPV I, S.A.P.I. de C.V. ("**Greenfield**"), Terminales Portuarias del Pacífico, S.A.P.I. de C.V. ("**TPP**"), and Terminal Marítima de Carbón, S.A. de C.V. ("**TMC**") (together, "**Petitioners**"), by and through their attorneys, allege as follows in support of their petition for entry of an order confirming and recognizing, pursuant to the Inter-American Convention on International Commercial Arbitration, TIAS 90-1027 (the "**Panama Convention**" or the "**Convention**") and Chapters 2 and 3 of the Federal Arbitration Act, 9 U.S.C. § 301 *et seq.* (the "**FAA**"), the final arbitral award dated May 28, 2024 (the "**Award**") in the arbitration (the "**Arbitration**") between Petitioners, on the one hand, and Respondents *Comisión Federal de Electricidad* ("**CFE**") and *CFE Generación II EPS* ("**CFE Generación**" and, together with CFE, "**Respondents**"), on the other hand.  The Arbitration, captioned *Greenfield SPV I, S.A.P.I. de C.V., Terminales Portuarias del Pacífico, S.A.P.I. de C.V., Terminal Marítima de Carbón, S.A. de C.V. c/ Comisión Federal de Electricidad*, *CFE Generación II EPS*, was seated in Mexico City, Mexico and conducted under the 2020 Rules of the London Court of International Arbitration ("**LCIA Rules**").

## PRELIMINARY STATEMENT

Petitioners bring this proceeding under the FAA and the Panama Convention (i) for recognition of the Award rendered by an international arbitral tribunal in Petitioners' favor and against Respondents, and (ii) for entry of judgment in favor of Petitioners Greenfield and TPP and against Respondents, in the current net aggregate principal amount of approximately $40.4 million, plus interest and 16% value added tax ("**VAT**"), with such amounts to be adjusted for additionally accruing invoiced and unpaid amounts (including an additional principal amount of approximately

$11 million that will become payable shortly), as of the date of the Court's entry of judgement, in accordance with the Award.[1]

The dispute resolved by the Award arises from the Contract for the Provision of Coal Transportation and Storage Services dated December 23, 2016 (the "**Contract**"), as subsequently amended, between CFE (Mexico's state-owned national electric utility), as client, and Greenfield, as contractor and service provider. TPP also signed the Contract, *inter alia* undertaking joint and several liability for Greenfield's performance. The Contract was part of a larger effort, to which TPP and TMC were parties, in various capacities, to expand the supply of coal to the Plutarco Elías Calles thermoelectric Plant in Guerrero, Mexico, which is owned by CFE (the "**Plant**"). Under Mexican law and statutory provisions, CFE Generación, as CFE's subsidiary, manages the Plant and handles the day-to-day communications and activities on behalf of CFE (including payment requirements since 2020).

Between May 2019 and April 2021, Respondents and Greenfield exchanged several communications, each alleging that the other had breached its obligations under the Contract. Each party demanded certain payments for the alleged breaches. For its part, CFE Generación specifically directed Greenfield to pay the amounts purportedly due and owing from Greenfield to CFE into a bank account maintained by CFE at Citibank N.A. in New York (the "**CFE CITI New York Accoun**t").

---

[1]     As explained below, the Award ordered Respondents to pay certain additional amounts on an ongoing yearly basis for each of the 2023-2033 operating years. Petitioners submitted a payment request to Respondents for such amounts for the 2023-2024 operating year on August 21, 2024, with payment due 20 days after receipt of the corresponding invoice. Should Respondents fail to timely pay such amounts, the Court's entry of judgment should include them.

Thereafter, Greenfield (later joined by TPP and TMC) commenced arbitration on April 12, 2021, seeking, among other relief, payment from Respondents of certain unpaid fees due and owing under the Contract.  In response, on April 13, 2021, immediately after Greenfield initiated the Arbitration, CFE called on the Irrevocable Standby Letter of Credit that Greenfield had provided under the Contract as an operational guarantee (the "**Operational Guarantee**"), directing Banco Nacional de México, S.A. ("**Banamex**") to pay $6,911,333.11 into the CFE CITI New York Account to cover certain demurrage costs incurred by CFE, allegedly as a result of Greenfield's purported delays.  Greenfield demanded that CFE and CFE Generación return the improperly drawn Operational Guarantee amount now sitting in the CFE CITI New York Account, but Respondents failed to do so.

In its Award, the arbitral tribunal unanimously found that CFE and CFE Generación breached the Contract and ordered them to pay more than $40 million for their breaches, plus approximately $10 million per year for the remainder of the Contract term from 2023 through 2033 (the "**Awarded Amounts**").  Among other things, the tribunal concluded that CFE and CFE Generación failed to pay certain Port Services Charges under the Contract, and that the draw of the Operational Guarantee was improper.

Despite the tribunal's order, neither CFE nor CFE Generación have paid any of the Awarded Amounts.  As a result, Petitioners are entitled to a judgment confirming and recognizing the Award against Respondents.

## **PARTIES**

1.    Petitioner Greenfield is a corporation organized and existing under the laws of Mexico with its principal place of business and main offices at Monte Pelvoux No. 220, Piso 6 –

Lomas de Chapultepec IV Sección, Col. Lomas de Chapultepec, Miguel Hidalgo, 11000, Mexico City, Mexico.

2.     Petitioner TPP is a corporation organized and existing under the laws of Mexico with its principal place of business and main offices at Recinto Portuario, Canal Oriente, Av. Los Ríos, PO Box 83, Lázaro Cárdenas, Michoacán, Mexico.

3.     Petitioner TMC is a corporation organized and existing under the laws of Mexico with its principal place of business and main offices at Recinto Portuario, Canal Oriente, Av. Los Ríos, PO Box 83, Lázaro Cárdenas, Michoacán, Mexico.

4.     Respondent CFE is a Mexican company directly and wholly owned by the Mexican state with its headquarters at Avenida Paseo de la Reforma No. 164, 11th floor, Col. Juárez, Alcaldía Cuauhtémoc, 06600, Mexico City, Mexico.  As such, CFE is an agency or instrumentality of Mexico under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "**FSIA**").

5.     Respondent CFE Generación is a Mexican company and a subsidiary of CFE with its headquarters at Avenida Paseo de la Reforma No. 164, 11th floor, Col. Juárez, Alcaldía Cuauhtémoc, 06600, Mexico City, Mexico.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction in this proceeding pursuant to 9 U.S.C. §§ 203 and 302, which provide that United States District Courts shall have original subject matter jurisdiction over actions and proceedings governed by the Convention.  Both Mexico and the United States are signatories to the Convention.

7.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that United States District Courts shall have original subject matter jurisdiction over any nonjury civil action against a foreign state, as defined in 28 U.S.C. § 1603(a), unless the foreign state is entitled to immunity under 28 U.S.C. §§ 1605-1607 or an applicable international

4

agreement.  Section 1603(a) defines a "foreign state" to include "an agency or instrumentality," as defined in § 1603(b).  As noted, CFE is an agency or instrumentality of Mexico.

8.      Two of the FSIA's exceptions to immunity enumerated in 28 U.S.C. § 1605 independently confer subject matter jurisdiction to confirm and enforce the Award against CFE.  First, the "arbitration exception" in 28 U.S.C. § 1605(a)(6) confers jurisdiction in an action "to confirm an award made pursuant to [a foreign state's] agreement to arbitrate" and "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6).  These requirements are satisfied here: the Award that Petitioners seek to confirm is the product of the arbitration agreement between Petitioners and Respondents, and it is governed by the Panama Convention.

9.      Second, the "waiver" exception in 28 U.S.C. § 1605(a)(1) confers jurisdiction in an action "in which the foreign state has waived its immunity either explicitly or by implication[.]"  This exception applies here because, in Clause 17.6 of the Contract, CFE expressly waived its sovereign immunity as follows:

> This Agreement and the transactions contemplated herein constitute business activities of the Parties, and both, [CFE] and [Greenfield] agree that, to the extent that any of them or any of their assets has or could have in the future any right of immunity (whether as sovereign immunity or otherwise) before the other Party or any of its respective successors and permitted assignees, related to any legal procedure, in Mexico or in any other foreign jurisdiction (or the corresponding political subdivisions) to execute this Agreement, or derived from the transactions contemplated in this Agreement, including without limitation, immunity to be summoned, immunity of jurisdiction or a ruling of any court or tribunal, immunity for the execution of a ruling, and immunity of prejudgment attachment on any of its assets, by means of this Agreement, each Party expressly and irrevocably waives such immunity regarding such jurisdiction, in the broadest way in accordance with the Applicable Laws, except that: (i) under article 90 of the Federal Commission Electricity Law, the real estate property of [CFE] and its subsidiary productive companies are subject to the federal property regime and, thus, have jurisdiction immunity, and (ii) pursuant to article 5 of the Federal Commission Electricity Law, the public service of electric power transmission and distribution is reserved to the

Mexican State through [CFE] and, thus, the related assets are also subject to immunity.

Declaration of F. Camilo Vázquez López dated August 21, 2024 ("**Vázquez Decl**."), Ex. B.

10.     Further, the Court has personal jurisdiction over CFE pursuant to 28 U.S.C. § 1330(b), which confers personal jurisdiction over a foreign state (including an agency or instrumentality of a foreign state such as CFE here) that is not immune from suit, provided that service of process is effected in accordance with 28 U.S.C. § 1608.  Petitioners will serve CFE in accordance with 28 U.S.C. § 1608(b), which governs service on agencies and instrumentalities of a foreign state.

11.     Moreover, in this Circuit, corporate agencies or instrumentalities of a foreign state, unless they are alter egos of their parent state, are entitled to due process protections, such that the usual "minimum contacts" standard for jurisdiction applies.  *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 65-66 (2d Cir. 2021).  Applying that standard, CFE, as well as CFE Generación, are plainly subject to this Court's personal jurisdiction because Respondents' dispute-related contacts with the United States, and with New York in particular, are more than sufficient to satisfy due process.

12.     As explained above, during the course of the parties' contractual performance, and before the Arbitration was initiated, CFE Generación, which is in charge of the Plant's management and acting on behalf of CFE, demanded that Greenfield pay certain demurrage charges allegedly owed under the Contract into the CFE CITI New York Account.  Those very charges were the subject of a dispute between the parties and, later, of the Arbitration.  Shortly after the Arbitration commenced, CFE drew on the Irrevocable Standby Letter of Credit that Greenfield issued under the Contract, allegedly to satisfy the outstanding demurrage charges, and directed Banamex to make payment into the CFE CITI New York Account.  As part of the Award,

the tribunal determined that Respondents' demand for payment was improper and explicitly ordered Respondents "to reimburse Greenfield the amount of USD 6,896,021.11 […] charged for the execution of the Operational Guarantee, net of the amount of the demurrage corresponding to the vessel ANNA MARIA, first voyage." Vázquez Decl. Ex. A (Award), ¶ 732(viii).

13.     Hence, Respondents' specific and explicit demands that the disputed $6.9 million be paid into the CFE CITI New York Account satisfy the requirements of N.Y. C.P.L.R. § 302(a)(1), which confers personal jurisdiction where, as here, (i) the defendant "ha[s] transacted business within the state"; and (ii) the plaintiff's claim "arise[s] from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). CFE Generación is further subject to personal jurisdiction as it "acted as the 'principal, agent, and representative' of a corporation that purposefully solicited business in New York." *Vorcom Internet Servs., Inc. v. L & H Eng'g & Design LLC*, No. 12 CV 2049(VB), 2013 WL 335717, at *2 (S.D.N.Y. Jan. 9, 2013). As such, the exercise of personal jurisdiction over Respondents in this action comports with due process. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements.").

14.     Finally, venue in this District is proper pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f).

## FACTUAL BACKGROUND

### A.     Background to the Dispute

15.     In December 2016, CFE notified TPP and Greenfield that they would be part of a project to expand the supply of coal to the Plant. Award, ¶ 16. On December 23, 2016, CFE and Greenfield entered into the Contract as part of this effort. *Id.*, ¶ 17. TPP, for its part, was to operate a specialized terminal at the Port of Lazaro Cardenas (the "**TPP Terminal**"), and it also signed

the Contract as an additional obligor (undertaking joint and several liability for Greenfield's performance). *Id.*, ¶¶ 15, 17. Under the Contract, Greenfield agreed to (i) construct a coal transportation and storage system from the TPP Terminal to the Plant; and (ii) provide coal reception, unloading, storage, blending, transportation and delivery services, from the TPP Terminal to the Plant, for a defined minimum volume (the "**Annual Fixed Amount**"). *Id.*, ¶¶ 17, 18. The Contract has a 172-month term starting on the date of commercial operation, which the parties agreed was May 21, 2019 ("**DCO**"), and ending in 2033. *See id.,* ¶¶ 20, 24.

16.     The Annual Fixed Amount is the coal quantity that Greenfield is obliged to unload, transport, and store annually and for which CFE is required to take delivery and pay, or to pay if it does not take delivery. *Id.*, ¶ 18. The Annual Fixed Amount is equivalent to 1,300,000 tons of coal. *Id.*, ¶ 18.

17.     Pursuant to clauses 5.6(a) and 6.1 of the Contract, CFE is required to pay for the Annual Fixed Amount and the provision of Transportation and Storage Services, which include a port services charge of $6.50 per ton of coal ("**Port Services Charge**"). *Id.*, ¶ 19. The parties described these obligations as "use-or-pay," meaning that CFE would need to pay Greenfield for 1,300,000 tons of coal on a yearly basis regardless of whether it took the coal or not. *Id.*, ¶ 283.

18.     Also on December 23, 2016, Greenfield and TMC entered into an Operation and Maintenance Contract ("**O&M Contract**"), which TPP again signed as an additional obligor. *Id.*, ¶ 23. Under the O&M Contract, TMC undertook the Transportation and Storage Services and maintenance of the Transportation and Storage System (as defined in the O&M Contract). *Id.* However, in accordance with the terms of the O&M Contract, TPP and TMC are the entities that materially perform the Port Services and the Transportation and Storage Services. *Id.*, ¶ 235.

19.     Under both the Contract and the O&M Contract, the parties established a 90-day free storage period, under which coal storage is provided at the TPP Terminal without charge.  *Id.*, ¶ 683.  However, the contracts provide for liquidated damages for demurrage costs on a daily basis for any coal that remains in storage longer than 90 days.  *Id.*, ¶ 683.

20.     Commencing around May 2019, the parties began to disagree on alleged delays related to unloading several vessels and to achieving the DCO.  *See, e.g.*, *id.*, ¶¶ 29-32.  Over the next several months, Respondents demanded payment from Greenfield of certain liquidated damages for alleged demurrage costs associated with the purported delays in unloading the vessels.  *Id.*, ¶¶ 36-98.  Greenfield disputed that these amounts were owed under the Contract and maintained that Respondents were responsible for the delays.  *See, e.g.*, *id.*, ¶¶ 102, 182.

21.     Meanwhile, a second dispute arose between the parties over certain unpaid fees owed by CFE related to the Annual Fixed Amount.  As noted above, the Annual Fixed Amount required CFE to pay for 1,300,000 tons of coal per year, regardless of whether it took this full amount.  This use-or-pay clause also extended to certain Port Services Charges associated with delivery of the coal.  *See, e.g.*, *id.*, ¶¶ 273-299.  In breach of the Contract's terms, however, CFE refused to recognize these charges.  On September 1, 2020, Greenfield notified Respondents that it owed outstanding Port Services Charges amounting to more than $4 million.  *Id.*, ¶ 100.  The unpaid Port Service Charges eventually ballooned to more than $31 million (before VAT and interest).  *Id.*, ¶ 251.

22.     Following months of correspondence between the parties regarding these issues, Greenfield commenced arbitration against CFE and CFE Generación on April 12, 2021, as further detailed below.  Shortly thereafter, on April 24, 2021, Respondents breached the terms of the Operational Guarantee by drawing on a letter of credit issued by Greenfield, allegedly as

compensation for the purported additional demurrage costs.  In doing so, Respondents directed Banamex to pay nearly $7 million into the CFE CITI New York Account.

### B.    The Arbitration

23.    As noted, on April 12, 2021, Greenfield commenced the Arbitration against CFE and CFE Generación.  The Arbitration was governed by the LCIA Rules and seated in Mexico City, pursuant to the parties' arbitration agreement in Clause 17.5 of the Contract, which provides:

(a) Disputes arising from or related to this Agreement, the breach, remedy or validity thereof, except for disputes of technical, operational or economic nature that are resolved under article 17.4 above, shall be exclusively and finally resolved through arbitration, in accordance with the LCIA Regulations, which are incorporated by reference herein.

(b) The seat of the arbitration shall be Mexico City, Federal District, and the arbitration shall be conducted in Spanish.

(c) The Applicable Law for the merits of the arbitration shall be the Mexican Law.

(d) The arbitration tribunal will be formed by 3 (three) arbitrators, one appointed by [Greenfield] and one by [CFE] in the Request for Arbitration and the Answer or request for extension, as applicable, and the third, who will be the Chairman, shall be appointed by agreement of the 2 (two) arbitrators appointed by [Greenfield] and [CFE], within 30 (thirty) Days following the confirmation of the two first arbitrators by the LCIA.

(e) If any Party fails to appoint an arbitrator as indicated in this article, or if the 2 (two) arbitrators appointed by the Parties do not reach an agreement regarding the appointment of the third arbitrator within the term stipulated herein, such arbitrator shall be appointed by the Secretary of the LCIA.

(j) The arbitration award shall be final and binding upon [Greenfield] and [CFE].

(g) The arbitration proceedings will be confidential and any Person participating in the same shall maintain confidentiality, including without limitation, regarding arbitration acting and any document submitted during arbitration, except and to the extent that disclosure is required from a Party in the exercise of its lawful right to protect any right or execute or challenge any award before a competent court or any other authority.

(h) The arbitration tribunal shall accept, as conclusive and binding, any option from an Expert regarding technical, operational or economic matters under the terms of Article 17.4, if any; except in case of (i) any irregularity in the appointment of the Expert, or (ii) manifest error, fraud or bad faith in such opinion.

(i) If any Party wishes to challenge the Expert's opinion, such Party shall file for arbitration under this Article within 30 (thirty) Days following the notice of the opinion, and shall state, in the Request for Arbitration, the cause or causes enlisted in this paragraph which set grounds for its challenge. If the manifest error causal is adduced, the Tribunal shall rule if such error substantially affects the outcome of the disagreement or dispute and determine the existence of such cause solely based on the wording of the opinion issued by the Expert.

(j) Notwithstanding the submission of a dispute to arbitration, the Parties shall continue performing their obligations under this Agreement, unless an order from the arbitration tribunal states otherwise.

Vázquez Decl., Ex. B.

24.    An arbitral tribunal, consisting of presiding arbitrator Mr. Christian Albanesi and two co-arbitrators, Mr. David Arias and Mr. Oscar Vásquez del Mercado Cordero, was duly constituted to adjudicate the parties' claims on July 20, 2021.  *See* Award, ¶ 12.

25.    On July 29, 2021, Greenfield filed a request to join TPP and TMC to the Arbitration ("**Request for Joinder**").  *Id.*, ¶ 122.  After hearing the parties on this issue, on October 27, 2021, the tribunal ordered TPP's and TMC's joinder to the Arbitration in Procedural Order No. 1.  *Id.*, ¶ 142.  The tribunal confirmed that TPP and TMC were proper parties to the Arbitration again in the Award, finding that TPP was a party to the Contract and that both TPP and TMC had the right to sue CFE under the Contract as Subcontractors thereunder.  *Id.*, ¶¶ 218-250.

26.    The procedural history of the Arbitration is set forth in detail in the Award.  *See Id.*, ¶¶ 118-180.  In summary, following several submissions, a five-day hearing took place in Mexico City, commencing on July 10, 2023.  *Id.*, ¶ 176.  The hearing was followed by post-hearing briefs and submissions on costs.  *Id.*, ¶¶ 179-180.

27.    In the Arbitration, Petitioners sought to recover more than $40 million owed by Respondents, among other relief.  More specifically, Petitioners requested, *inter alia*, that the tribunal:

- Declare that Greenfield is not liable for payment of demurrage charges in connection with the fifteen vessels that were the subject of the dispute;

- Declare that Respondents' payment request under the Operational Guarantee was improper;

- Order Respondents to reimburse Greenfield for the amount drawn on the Operational Guarantee;

- Order Respondents to pay the Port Services Charge based on the Annual Fixed Amount for the first, second, third and fourth operational years, as well as for the following years in which the Contract remains in force, plus interest and VAT;

- Order Respondents to pay liquidated damages in connection with the storage of coal in the TPP Terminal for longer than the free storage period; and

- Order Respondents to pay the Arbitration Costs.

*Id.*, ¶¶ 184, 187.

28.     On May 28, 2024, the tribunal issued the Award, in which it unanimously found that Petitioners were substantially successful in the Arbitration and directed Respondents to pay Petitioners the Awarded Amounts.  In particular, it determined that TPP was entitled to payment of the amounts related to the Port Services Charge that did not meet the Annual Fixed Amount for the operational years 2019-2020, 2020-2021, 2021-2022 and 2022-2023 (plus interest and VAT). *Id.*, ¶¶ 348, 732(iii)-(v).  The tribunal also determined that Respondents were required to pay the Port Services Charge (the minimum possible charge being based on the Annual Fixed Amount) for the subsequent operational years in which the Contract remains in force through 2033.  *Id.*, ¶¶ 353, 732(vi).  Moreover, the tribunal found that Respondents improperly executed the Operational Guarantee and that Greenfield was entitled to reimbursement of the wrongly drawn amounts (plus interest and VAT).  *Id.*, ¶¶ 430, 662, 732(vii)-(ix).

29.     Overall, the tribunal established that Petitioners were entitled to the following amounts (together, the "**Awarded Amounts**"):

(i)     Port Services Charges:

a.  For 2019-2020 operational year:

   i.  $4,039,727.10 plus 16% VAT;

   ii.  $398,383.47 plus 16% VAT, as default interest between September 21, 2020 and September 25, 2023;

   iii.  Interest at an annual rate of 3.27525% from September 25, 2023 until the date of actual payment;

b.  For 2020-2021 operational year:

   i.  $9,632,084.80 plus 16% VAT;

   ii.  $610,582.21 plus 16% VAT, as default interest between September 21, 2021 and September 25, 2023;

   iii.  Interest at an annual rate of 3.15225% from September 25, 2023 until the date of actual payment;

c.  For 2021-2022 operational year:

   i.  $9,603,492.13 plus 16% VAT;

   ii.  $691,581.13 plus 16% VAT, as default interest calculated between September 21, 2022 and September 25, 2023;

   iii.  Interest at an annual rate of 7.12329% from September 25, 2023 until the date of actual payment;

d.  For 2022-2023 operational year:

   i.  $8,561,715.85 plus 16% VAT;

   ii.  $7,949.80 plus 16% VAT, as default interest calculated between September 21, 2023 and September 25, 2023;

            iii.  Interest at an annual rate of 8.47283% from September 25, 2023 until the date of actual payment.

        e.  For the subsequent operating years of 2023 through 2033: the Port Service Charge for subsequent operating years during the term of the Contract as a minimum charge to be calculated based on the Annual Fixed Amount, which totals more than $10 million per year, plus, if applicable, any tons unloaded in addition to the Annual Fixed Amount. For operating year 2023-2024, the amount owed by Respondents is $11,049,671.10.

(ii)    Wrongly Drawn Operational Guarantee Amounts:

        a.  $6,896,021.11 plus 16% VAT; and

        b.  Annual interest at a rate of 3.21023%, to be calculated from April 24, 2021 to September 25, 2023, plus 16% VAT.

*Id.*, ¶¶ 350, 359, 732(iii)-(ix).

30.    The Award is currently final and binding on Respondents. Nevertheless, Respondents have failed to pay any of the Awarded Amounts through the date of this filing.

## **ARGUMENT**

31.    "Confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007).[2] "[R]eview of arbitral awards under the New York Convention is

---

[2]    As the Panama Convention, in most key respects, establishes the same framework as the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the **"New York Convention"**), both Conventions are "intended to achieve the same results, and their key provisions adopt the same standards, … [and] a general uniformity

very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009); *see also Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH*, 840 F. Supp. 2d 703, 710 (S.D.N.Y. 2011), *aff'd*, 495 F.App'x 149 (2d Cir. 2012) ("The role of a district court in reviewing an arbitral award is narrowly limited.") (citations and quotations omitted).  Consistent with its purpose "to remove obstacles to confirmation," *Waterside Ocean Nav. Co., Inc. v. Int'l Nav. Ltd.*, 737 F.2d 150, 153 (2d Cir. 1984), the Convention manifests a "general pro-enforcement bias."  *American Constr. Mach. & Equip. Corp. v. Mechanised Constr. Of Pakistan, Ltd*., 659 F. Supp. 426, 428 (S.D.N.Y. 1987), *aff'd*, 828 F.2d 117 (2d Cir. 1987).

32.    This Petition for confirmation and enforcement of the Award should be granted because, as demonstrated immediately below: (A) all statutory conditions for confirmation and enforcement are satisfied and (B) none of the limited grounds for refusal to confirm exist.

### A.    Petitioners Have Satisfied All of the Statutory Conditions for Confirmation and Enforcement

33.    This Petition falls within the confirmation and enforcement regime of the Convention and satisfies the statutory requirements for confirmation and enforcement.

34.    Chapters 2 and 3 of the FAA, 9 U.S.C. § 201 et seq., authorize federal courts to enforce foreign arbitral awards that are governed by the New York and Panama Conventions, respectively.  Article I(1) of the New York Convention states that it "shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought."  Here, the Arbitration was seated in

---

of results under the two conventions" can be expected.  *Energy Transp., Ltd. v. M.V. San Sebastian*, 348 F. Supp. 2d 186, 198 (S.D.N.Y. 2004) (quoting H.R. Rep. No. 101-501, at 4).

Mexico City, Mexico; thus, the Award is deemed to have been made in Mexico. Accordingly, as Petitioners are seeking to enforce an arbitral award made in the territory of a State other than the United States, the Award falls within the New York Convention. On the other hand, the Panama Convention applies to international commercial arbitration awards issued in States that have ratified or acceded to that Convention. Given that the Award was issued in Mexico, and Mexico has ratified the Panama Convention, the Award also falls within the Panama Convention.

35.     Under the FAA, when the requirements for the application of both Conventions are met, if a majority of the parties to the arbitration agreement are citizens of a State that ratified or acceded to the Panama Convention, and if such State is a member of the Organization of American States, the Panama Convention shall apply. 9 U.S.C. § 305. Here, Petitioners and Respondents are Mexican entities. Moreover, Mexico has ratified the Panama Convention, and it is also a Member State of the Organization of American States. Therefore, the Panama Convention takes precedence in this case and governs the enforcement of the Award.

36.     Finally, this Petition is brought within the applicable three-year statute of limitations. *See* 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."). The Award was rendered on May 28, 2024, and the Petition is therefore well within this period.

### B.     None of the Limited Grounds to Refuse Confirmation and Enforcement Exist

37.     The FAA mandates that a court "*shall* confirm the award" unless one of the grounds for refusal specified in the Convention applies. 9 U.S.C. § 207 (emphasis added); *see Telenor Mobile Communs. AS v. Storm LLC*, 584 F.3d at 405; *Oltchim v. Velco Chems., Inc.,* 348 F. Supp. 2d 97, 100 (S.D.N.Y. 2004). "The party asserting that one of the exceptions applies has the burden of establishing it," *MGM Prods. Group, Inc. v. Aeroflot Russian Airlines*, 573 F. Supp. 2d 772,

776 n.6 (S.D.N.Y. 2003), *aff'd*, 91 F. App'x 716 (2d Cir. 2004), and "the burden of proof required to avoid confirmation is very high." *Agility Pub. Warehousing Co. K.S.C. v. Supreme Foodservice GmbH,*, 840 F. Supp. 2d at 710 (citations and quotations omitted).

38.    None of the grounds for refusing enforcement of an award set forth in Article 5(1) of the Convention apply here, nor do either of the grounds set forth in Article 5(2) of the Convention.

## <u>CONCLUSION</u>

For the foregoing reasons, Petitioners respectfully petition this Court pursuant to the Panama Convention and 9 U.S.C. §§ 301, 302, 202, and 207, to:

a.  Enter an order confirming and enforcing the Award against Respondents;

b.  Enter judgment that Respondents are liable to Petitioners Greenfield and TPP in the amount of the Awarded Amounts, plus VAT and interest as provided in the Award;

c.  Enter an order requiring Respondents to pay the attorneys' fees and costs incurred by Petitioners in connection with this proceeding, in accordance with the Contract; and

d.  Award such further relief as may be just and proper.

Dated:    New York, New York
          August 23, 2024

                          Respectfully Submitted,

                          */s/ Andreas A. Frischknecht*
                          Andreas A. Frischknecht
                          Gretta Walters
                          Marcel Engholm

                          **CHAFFETZ LINDSEY LLP**
                          1700 Broadway, 33rd Floor
                          New York, NY 10019
                          Tel. (212) 257-6960
                          Fax (212) 257-6950

                          *Attorneys for Petitioners Greenfield SPV I, S.A.P.I. de
                          C.V., Terminales Portuarias del Pacífico, S.A.P.I. de
                          C.V., and Terminal Marítima de Carbón, S.A. de C.V.*